## IN IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARY FERNANDEZ,                         *

      and                         *

THE NATIONAL FEDERATION              *
OF THE BLIND, INC.,                                     Civil Action No.: 1:20-cv-492
                                                           *

     Plaintiffs,                    *
  v.                                          *

DUKE UNIVERSITY,                          *

     Defendant.                     *

            *  *  *  *  *  *  *  *  *  *  *  *  *

## <u>COMPLAINT AND JURY TRIAL DEMAND</u>

Plaintiffs Mary Fernandez and the National Federation of the Blind, Inc. ( "NFB"), by and through undersigned counsel, file this complaint against Defendant Duke University ("Duke") for denying the blind equal access to Duke's programs and activities in violation of federal law. They allege as follows:

### INTRODUCTION

1.    Mary Fernandez was a graduate student at Duke. She first enrolled for the fall of 2018 to pursue a Master of Business Administration. Ms. Fernandez is blind and is a member of the National Federation of the Blind. She was persuaded to select Duke in

1

large part because of its assurances that it could and would give her an opportunity equal to her sighted peers to pursue her career goals.

2.      Instead, as set forth in detail below, Duke denied Ms. Fernandez an opportunity equal to that afforded her sighted peers to access course materials and educational technology and, as a result, denied her the opportunity to learn in an equally effective and integrated manner alongside her sighted peers. That denial stemmed from Duke's failure to provide Ms. Fernandez timely and adequate access to: (1) course materials in an accessible format including handouts, assignments, PowerPoint presentations, and class notes; (2) useful tactile graphics; and (3) accessible course registration and employer recruiting software programs.

3.      Braille is Ms. Fernandez's primary reading method. As the NFB has emphasized, Braille is vital to literacy for the blind.

4.      For digital text, Ms. Fernandez uses screen access software, Job Access with Speech ("JAWS"), which displays text on a refreshable Braille display or vocalizes the text using synthesized speech. Screen access software such as JAWS enables Ms. Fernandez to use keyboard commands to easily navigate text, to change the speed of the vocalized text, to enhance her reading speed and comprehension, and to receive audible cues concerning paragraphing, punctuation, and other organizational information. In short, screen access software allows Ms. Fernandez to read textual content with the same independence and ease of use that visual readers enjoy.

5.      When digital content is properly formatted, it is universally available to sighted and blind alike and does not require the re-creation of text in a separate format.

6.     Recognized standards exist for the preparation and presentation of universally designed mainstream digital content. For example, the International Digital Publishing Forum has established the ePub 3.0.1 standard for published digital content, and the World Wide Web Consortium has promulgated Web Content Accessibility Guidelines 2.1. Accessible math content, critical to Ms. Fernandez's educational path, is best presented in MathML. Free open-source software has been written to make it easy to convert equations from the language in which they are typically written (LaTex) into MathML. When source files are not available, equations can be pasted into Microsoft Word and then, with the aid of an inexpensive (approximately $30) plug-in, can be exported from Word into MathML.

7.     Like a public accommodation building an entrance with steps and no ramp, Duke has created accessibility problems by making procurement decision about digital content without considering whether students with disabilities will have integrated and immediate access to that content. Duke compounds that failure by not timely converting inaccessible content to accessible content so that students with disabilities may have access to course-related content at the same time as their nondisabled peers.

8.     Universities use a wide array of software programs to help students search for jobs and sign up for events on campus, including job interviews and networking events. Duke has acquired inaccessible software for these activities. Consequently, Duke forced on Ms. Fernandez less effective and segregated communication methods, which made it difficult, if not impossible, for her to acquire basic information on available jobs through the software systems used by her peers.

Case 1:20-cv-00492-NCT-JLW   Document 1   Filed 06/04/20   Page 3 of 38

9. Ms. Fernandez relies on tactile graphics, including raised line illustrations and their accompanying Braille labels, to comprehend images and diagrams that appear digitally and in print. The preparation of tactile illustration requires precision and expertise. Modes of producing tactile images range in quality and accuracy. Because diagrams and graphics are critical to accounting, statistics, and other quantitative courses offered in Duke's MBA program, tactile graphics that are prepared accurately are an essential component of Ms. Fernandez's education. Duke did not provide Ms. Fernandez with an equal opportunity to access graphical information. In accounting, statistics, and other quantitative classes, this failure meant that she was deprived of an important body of information that was communicated timely and effectively to her fellow students.

10. Duke's failure to provide Ms. Fernandez an equal opportunity to access the content, classroom learning, and activities in these required courses forced her to achieve grades that did not reflect her intelligence, aptitude, and efforts and instead reflects only the barriers to learning that Duke erected. Duke's failure to afford Ms. Fernandez an equal opportunity to compete at a level commensurate with her capabilities caused her: (1) to expend tuition, fees, and expenses in exchange for an inferior educational experience to that which Duke has offered her sighted peers; (2) lost career opportunities; and (3) severe emotional distress.

11. Ms. Fernandez relied on Duke's assurances of equal access and upheld her end of the bargain by enrolling, paying tuition, and applying herself to her studies. Duke, far from providing an equal opportunity to access educational benefits, offered Ms. Fernandez a nightmarish experience of failed and broken promises, unfair disadvantage

4

and discrimination, and an educational experience that was inferior to what she was entitled and what others received.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the claims of Ms. Fernandez and the NFB arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

13.     Ms. Fernandez is a resident of Woodbridge, New Jersey.

14.     Duke University is a not-for-profit corporation registered with the North Carolina Secretary of State. Its principal office is located in Durham, North Carolina. The acts and injuries complained of herein occurred in Durham, North Carolina.

15.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant does business in this district, the acts constituting violations of the ADA and Section 504 occurred in this district, and Ms. Fernandez resides in this district.

## THE PARTIES

16.     Ms. Fernandez has been blind since the age of four. She grew up in Woodbridge, New Jersey. She graduated from Emory University with a 3.8 grade point average. Duke awarded her a scholarship, as did the New Jersey Commission for the Blind. For the rest of her educational expenses at Duke, she has incurred student loan debt.

17.     Ms. Fernandez enrolled at Duke for the fall of 2018 and chose Duke specifically because when she was admitted to Duke but had not yet decided whether she

5

would attend the university, Ms. Fernandez met with Duke's Assistant Director of Student Life, Daytime MBA Program, Rebecca McMillan, who assured Ms. Fernandez that Duke would fulfill her requested accommodations. Ms. McMillan told Ms. Fernandez that she would be provided Braille content for her quantitative classes and that she would be able to take notes on her computer during class. In short, Ms. McMillan assured Ms. Fernandez that Duke took its legal obligation of equal access seriously to ensure that Ms. Fernandez would have an academic experience equal to her fellow students.

18.     The National Federation of the Blind, the oldest and largest national organization of blind persons, is a 501(c)(3) non-profit corporation duly organized under the laws of the District of Columbia and headquartered in Baltimore, Maryland. It has affiliates in all 50 states, Washington, D.C., and Puerto Rico. The NFB and its affiliates are widely recognized by the public, Congress, executive agencies of state and federal governments, and the courts as a collective and representative voice on behalf of blind Americans and their families. The organization promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and community life, transportation, and recreation.

19.     The mission of the National Federation of the Blind is to achieve the complete integration of the blind into society on a basis of equality. This mission includes the removal of legal, economic, and social discrimination against the blind. As part of its

6

mission and to achieve these goals, the NFB actively pursues advocacy, education, and litigation to ensure that the blind receive equal access to the opportunities, facilities, services, programs, and activities offered by institutions of higher education.

20.     The NFB devotes substantial resources to accessible post-secondary education. It supports a division, the National Association of Blind Students, that brings students together to discuss barriers and solutions to equal access to education. Each year, the NFB provides over $120,000 in scholarships to blind students pursuing their college careers across all 50 states, the District of Columbia and Puerto Rico. This is the largest scholarship program of its kind in the country. In addition, the NFB developed the Self-Advocacy in Higher Education Toolkit to help blind students better understand the higher education accommodation request process, mitigate access barriers on campus, and ultimately to succeed as a student.

21.     For over forty years, the NFB has been directly involved in the development of technology that helps blind people, including post-secondary students, access print materials. In the 1970's, it collaborated with Ray Kurzweil to develop the Kurzweil Reading Machine, the first machine to use optical character recognition to convert text to speech. More recently, the NFB led the team that evolved this revolutionary technology into an app for smartphones, making it more universally available to blind and other print-disabled people. To promote the development of uniform practices by colleges for print-disabled students, the NFB persuaded Congress to create a federal Advisory Commission for Accessible Instructional Materials in Postsecondary Education for Students with Disabilities ("AIM Commission") that

examined the barriers faced by students and faculty with disabilities in gaining access to instructional materials and made recommendations. Currently, the NFB is working with the Association of American Publishers, the Software Industry and Information Association, and the American Council on Education to support federal legislation that would authorize a Federal Advisory Commission for Accessible Instructional Materials in Postsecondary Education for Students with Disabilities. The NFB has established a Center of Excellence in Nonvisual Access (CENA) to Education, Public Information, and Commerce with support from the Maryland Department on Disability through a Non-Visual Access Initiative Grant that offers Accessibility Boutiques (introductions to accessibility) that are free of charge and open to the public. Boutiques on topics relevant to higher education include: tactile graphics, document accessibility, web accessibility, Amazon accessibility, Google apps, and digital books. It also conducted day-long web accessibility training conferences in 2014 and 2015.

22.     The NFB also developed the Higher Education Accessibility Online Resource Center that provides links to accessibility standards and guidelines, guidance on how to create non-visually accessible documents, links to federal guidance documents, and links to settlement agreements with institutions of higher education. The NFB has developed best practices for institutions of higher education that cover policies on accessibility, procurement procedures, accessibility audits and corrective action plans, and training of faculty, staff, volunteers, and students. To educate the university community, the NFB has done presentations on accessibility organizations of institutions of higher education including EDUCAUSE, the Association of Independent Colleges and

Case 1:20-cv-00492-NCT-JLW   Document 1   Filed 06/04/20   Page 8 of 38

Universities in Massachusetts (AICUM), the Tennessee Board of Regents, and at Accessible Instructional Materials and Technology in Higher Education Summit. Two NFB staff members participated on the Maryland Legislative Workgroup on Accessibility Concepts in Computer Science, Information Systems, and Information Technology Programs in Higher Education. The purpose of the workgroup was to evaluate the extent to which accessibility is incorporated into the curriculum of computer science, information systems, and information technology programs in Maryland institutions of higher education and to make recommendations.

23.     In addition, through collaboration, negotiation, complaints with the Office of Civil Rights of the Department of Education or litigation, the NFB has assisted students in resolving issues and reaching comprehensive agreements addressing access to educational content and software at Penn State University, Arizona State University, Florida State University, University of Miami, University of Montana, Atlantic Cape Community College, Maricopa County Community College, Southern Oregon, and Wichita State University.

24.     The NFB has diverted significant resources to identify and counteract the use of inaccessible, discriminatory technology and course materials at educational institutions, including at several colleges and universities that provide courses, job search, and interview opportunities similar to Duke. The NFB brings this suit in furtherance of its extensive efforts and expenditure of resources in promoting two of its principal missions: independence of the blind and equal access to higher education institutions for the blind.

Case 1:20-cv-00492-NCT-JLW   Document 1   Filed 06/04/20   Page 9 of 38

25.     The NFB sues Duke in furtherance of its extensive efforts and expenditure of resources in working to ensure equal access to institutions of higher education for the blind and as a result of Duke's frustration of the NFB's mission.

26.     Ms. Fernandez is a member of the NFB.

27.     Defendant Duke is a public accommodation pursuant to 42 U.S.C. § 12181(7)(J).

28.     Defendant Duke receives federal financial assistance in many forms, including, but not limited to, direct grants of assistance as well as student financial aid, and is therefore required to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

29.     As a condition of receiving federal funds from the Department of Education, Defendant Duke is required to sign a Certificate of Compliance certifying that it is in compliance with Section 504 of the Rehabilitation Act.

## STATEMENT OF FACTS

### I.     Prior to matriculation at Duke

30.     Ms. Fernandez applied to Duke's MBA program in November 2017. Because Duke's web-based application was inaccessible, Ms. Fernandez was forced to submit a paper application. Upon information and belief, Ms. Fernandez was the only 2018 applicant to Duke's Master of Business Administration program who had to submit a paper application, contrary to Duke's policy that applications be completed online.

31.     Initially Duke mailed Ms. Fernandez inaccessible screenshots of the online application that made it impossible for Ms. Fernandez to apply. The application process

10

was overly time consuming and took far longer to complete than any of her other MBA applications.

32.     In March 2018, Ms. Fernandez learned that she had been accepted to Duke.

33.     Duke uses course packs instead of traditional textbooks, so all the course materials are given to students in paper. Duke also generally does not allow students to use computers or electronic devices in class.

34.     During Duke's Admitted Student Weekend, April 5–7, 2018, Ms. Fernandez met with Ms. McMillan to discuss the modifications that she would require for her course materials. Ms. Fernandez needed Braille materials and tactile graphics for quantitative classes, and Ms. McMillan assured Ms. Fernandez that Braille materials would be provided. Ms. Fernandez also discussed with Ms. McMillan about the accommodations she would need for the job interview process.

35.     In July 2018, Ms. Fernandez took an optional one-week math refresher course. Ms. McMillan was able to provide Ms. Fernandez with hardcopy Braille course materials, so Ms. Fernandez was hopeful that Duke would provide her with the materials she needed to have equal access to all of her learning opportunities. Unfortunately, Ms. Fernandez's hopes were dashed shortly thereafter.

36.     Also in July 2018, Ms. McMillan assisted Ms. Fernandez with requesting reasonable accommodations through Duke's Student Disability Access Office ("SDAO").

37.     On July 26, 2018, Ms. Fernandez received a Formal Liaison Letter from the SDAO granting accommodations, including the following:

    a.   Priority Registration;

11

b. Books in Alternative Format/: Accessible Electronic or Braille;

c. Alternative Format//Course Materials/handouts in Alternative Format Accessible Electronic or Braille; and

d. Alternative Format//Exams/Tests/Quizzes in Alternative Format Accessible Electronic or Braille.

38. In late July or early August, Ms. Fernandez met with the Director of Duke's Career Management Center, Sheryle Dirks, and Mary Beck White-Sutton, her Career Coach, who both assured Ms. Fernandez that the accommodations she needed for the interview process would be in place.

39. During the summer of 2018, incoming students were required to complete an online mathematics tutorial, MBA Math, consisting of video lectures, which were inaccessible, and online math problems, which were not accessible with screen access software. Ms. Fernandez immediately contacted Ms. McMillan to inform her of these barriers.

40. In an attempt to resolve the accessibility issues with the tutorial, Ms. McMillan signed a contract for Aira, "a service that connects blind and low-vision people to highly trained, remotely-located agents" to assist Ms. Fernandez. Aira agents, however, do not know mathematics and accounting principles, which made it impossible for them to accurately and meaningfully describe the contents of the video lectures and online problems to Ms. Fernandez. As a result, Duke waived the MBA Math tutorial requirement for Ms. Fernandez, and she did not complete the course. Thus, Duke failed to

12

provide Ms. Fernandez access equal to that of her peers, and she began her MBA coursework at a disadvantage, having not received the benefit of the MBA Math tutorial.

41.     When it came time to register for classes, Ms. Fernandez learned that DukeHub, Duke's course registration system, is not fully accessible. Although Duke allowed Ms. Fernandez to participate in early registration with the Registrar completing registration for her, she was denied the ability to access the important information available from DukeHub's "Book Bag" feature which provides a course listing and course descriptions, and she had to rely on the Registrar to get this information. Thus, Ms. Fernandez did not have access to Duke's course catalogue equal to that of her sighted peers and could not make equally informed decisions when making course selections.

42.     In July 2018, Ms. Fernandez attempted to take another prerequisite online course, "Business Computer Application," which is designed to teach students how to use more advanced functions in Excel. The course consisted of five assignments and each assignment had ten different tabs with exercises that students had to complete. The instructions were visual, using screen captures of Excel embedded in a PDF document, both of which were inaccessible, to illustrate how to perform the advanced functions. The instructions used arrows, circles, and other shapes in different colors drawn on top of the screen captures to highlight where to find a function, which were inaccessible because JAWS does not indicate when there is a change in color.

43.     Because Duke failed to provide Ms. Fernandez with the necessary accessible course materials, it waived the Business Computer Application course requirement. As a result, Ms. Fernandez did not acquire the necessary skills from the

Business Computer Application course that other students acquired. Thus, Duke again failed to provide Ms. Fernandez access equal to that of her peers and again disadvantaged her because she did not acquire the knowledge from the Business Computer Application course that her peers did and which she certainly needed and her prospective employers expected her to have.

44.     In August 2018, Duke began its three-week Global Institute Courses, consisting of three classes—two traditional and one experiential. The traditional courses, Leadership, Environment, and Organizations ("LEO") and Global Institutes and Environments ("GIE"), were text-based and required papers and projects to be completed in teams. Although Ms. Fernandez received the LEO cases in an accessible format, she did not receive them until the day or night before the class in which she was expected to discuss them, so she could not properly prepare for class. In addition, the accessible versions of the LEO cases often lacked informative exhibits, which Ms. Fernandez's sighted peers received, that provided the full context of the case.

45.     Duke also failed to ensure that its web-based employer recruiting system, Global Talent System ("GTS"), which students use to learn about prospective employer events, interviews, and job postings was accessible. Setting up the user profile for GTS was a completely inaccessible process, and Ms. Fernandez was eventually forced to have an Aira agent do it for her. GTS would sometimes require users to update certain parts of their profiles, and every time Ms. Fernandez would have to contact an Aira representative for assistance, otherwise she would be locked out of GTS. Once she was able to log into her GTS account, Ms. Fernandez learned that there was no accessible search function for

14

the over 400 job postings on GTS that changed on a daily basis. Unlike her sighted peers, Ms. Fernandez had to review every post every day to find just a single job posting. In addition, the unusable navigational structure of GTS made it impossible to quickly scan and skip through past postings. The sign-up system for appointments for one-on-one or small group events with employers was inaccessible, and Ms. Fernandez was forced to email staff in the Career Management Center or an Aira agent to have them sign her up. Like the job postings, there was no accessible search function or navigation for employer events and job fairs, so Ms. Fernandez had to sort through all posted events. In addition, GTS contains significant content, such as resume books for the first- and second-year classes. Students use the resume books to connect and network with Duke alumni who work at the companies they are interested in. The resume books are inaccessible because the resumes are displayed as graphics, as opposed to text, and the resume books themselves are PDF documents that have not been made accessible. This prevented Ms. Fernandez from using Duke's alumni network to aid her job search, unlike her sighted peers. The job search process was frustrating and incredibly time consuming. Consequently, Ms. Fernandez was forced to devote an immeasurable amount time and mental energy to searching for a job, signing up for interviews, and finding workarounds to the accessibility barriers GTS put in her way—time and energy that she otherwise would have devoted to her classes and extra-curricular activities.

46. In addition, Duke's Career Management Center failed to take any steps to speak with recruiters about accommodations for the interview process, contrary to what

15

Ms. Fernandez discussed with Ms. McMillan and the Career Management Center during orientation.

47.     For consulting job interviews, the employers create business mini-cases, none of which were accessible. Duke has a casebook of mini-cases to aid students in preparing for consulting interviews, which is also inaccessible. Ms. Fernandez asked her career advisor, Mary Beth White, to do one-on-one discussions of the mini-cases in preparation for the consulting interviews, but Ms. White never followed up with Ms. Fernandez. Instead, Ms. Fernandez personally found first- and second-year Duke students to help her prepare. Ms. Fernandez also attempted to prepare for these interviews by attending a class called "Road Map" offered by Duke's consulting club, but the course materials were inaccessible. When Ms. Fernandez got to the mini-cases in the interviews, she struggled, in large part because she never had access to the tools made available to all other students to prepare for consulting interviews. In addition, because the Career Management Center failed to take any steps to request accommodations from the employers for Ms. Fernandez, Ms. Fernandez had to contact the employers directly to request accessible versions of the exhibits to their mini-cases, but none of the employers provided them.

48.     For networking purposes, Duke required students to complete a "List, Alumni, Motivation, Posting" ("LAMP") whereby students would generate a list of 40 target employers using LinkedIn. Although the assignment was only intended to take 40 minutes, because LinkedIn is not accessible, it took much longer for Ms. Fernandez to

16

complete. Ultimately, Duke required Ms. Fernandez to generate ten employers instead of 40 and she ended up being locked out of GTS because her assignment was late.

49.     Duke alumni can use the Career Management Center's resume book, which is inaccessible and thus unavailable to a blind alumnus. Ms. Fernandez believes, now that she has graduated from Duke, she will encounter similar barriers in searching for jobs using Duke resources as an alumna to the ones she faced with the GTS system.

## II.     Fall 2018

50.     Duke's failures to provide Ms. Fernandez with equal access to opportunities, services, programs, and activities continued into the 2018–2019 Academic Year.

51.     Duke uses the following grading scale: Superior Pass (SP) = 4.0; High Pass (HP) = 3.5; Pass (P) = 3.0; Low Pass (LP) = 2.5; and Fail (F) = 0.

### A.     2018 Fall I

52.     Ms. Fernandez registered for four courses for the Fall I Term: Financial Accounting, Managerial Economics, Probability and Statistics, and Leadership Communication I.

53.     Before the Fall I Term began, Ms. McMillan repeatedly contacted professors and staff for Ms. Fernandez's courses about providing Ms. Fernandez with accessible materials. On information and belief, Duke told Ms. McMillan to stop bothering faculty and staff.

17

54.     In August 2018, Ms. Fernandez learned that no one had begun preparing accessible course materials for Managerial Economics or Probability and Statistics because Duke barred Ms. McMillan from speaking directly with the professors.

55.     On the first day of classes for the Fall I Term, Ms. Fernandez did not have accessible materials for any of her courses.

56.     Ms. Fernandez also learned that the online system for simulations, which students are required to use, is inaccessible. Ms. Fernandez was forced to rely on other students to complete the simulations.

57.     On August 10, 2018, the first Friday of the Fall I Term, the Assistant Dean, Steve Misuraca, and a Senior Associate Dean, Russ Morgan, asked to meet with Ms. Fernandez. Ms. Fernandez informed Deans Misuraca and Morgan that Duke was not providing her the necessary and required accessible course materials and other content, and that Duke's failure to do so would negatively impact her educational opportunities, including job prospects. They apologized and acknowledged that Duke had not provided her accessible course materials and stated that they would work to improve the situation. Deans Misuraca and Morgan did not resolve the myriad problems that existed.

### i.    Financial Accounting

58.     The course materials for the Financial Accounting course were at least a week late, so Ms. Fernandez could not prepare for class.

59.     Eventually Ms. Fernandez received the Accounting course materials in MathML, which reads the equations, and not as tactile graphics with Braille explanations, the format that would have permitted Ms. Fernandez to fully access the unfamiliar

18

symbols used in the equations. In addition, the professor would use financial statements from the Target Corporation for about 30 minutes at the beginning of each class to illustrate the concepts he had taught in the previous course, but Duke initially failed to provide Ms. Fernandez accessible versions of the financial statements, so she was perpetually trying to catch up in the course. Towards the end of the course, Duke provided Ms. Fernandez the Target financial statements in Braille, but she received them too late for her to catch up. As a result, Ms. Fernandez was not able to prepare for class, process the course materials concurrently with the lectures, fully absorb the content, or go back to find mistakes.

60.     Because Ms. Fernandez was not provided with tactile materials, and the materials she was provided through MathML were always late, she was not able to master the content nor perform at the level of her ability. As a result, Ms. Fernandez received a P in the course.

### ii.     Managerial Economics

61.     Duke failed to provide Ms. Fernandez with accessible course materials for her Managerial Economics class, even though the professor gave Duke the course materials so they could be made accessible.

62.     Because Duke failed to provide Ms. Fernandez with accessible course materials, the Managerial Economics professor met with her before scheduled quizzes the week of a quiz for an hour to go through the concepts being tested. However, Ms. Fernandez was forced to sit through class without any course materials, which affected

19

her ability to understand the lectures on the materials and ask questions in real time about critical course concepts.

63. Although other students had access to practice materials and solutions for quizzes two weeks in advance, the Managerial Economics professor worked through the practice material and the solutions for quizzes with Ms. Fernandez the day before each quiz.

64. Although Ms. Fernandez received an HP in the course, she knows that she did not acquire an actual working understanding of the materials or the proficiency expected of an MBA, and only achieved her grade because she devoted an inordinate about of time attempting to learn the course materials.

### iii. Probability and Statistics

65. Dean Misuraca was the only person communicating with the Probability and Statistics professor because Duke had barred Ms. McMillan from doing so.

66. Notwithstanding Dean Misuraca's earlier assurances that the situation would improve, Ms. Fernandez did not timely receive accessible course materials for the Probability and Statistics course.

67. Because Duke failed to provide Ms. Fernandez with accessible course materials, she was forced to ask her fellow students to make them accessible for her. But these materials did not allow her to have full access to the unfamiliar symbols in the equations because they were not produced as tactile graphics with Braille explanations.

68.     The Probability and Statistics professor's solutions were all handwritten, so the contractor creating Braille materials for Ms. Fernandez could not read them and convert them to tactile graphics with Braille explanations.

69.     Ms. Fernandez met with a Teacher's Assistant for the course who helped her, including by recreating the professor's solutions in accessible PDF documents. Nevertheless, the Teacher's Assistant could not complete the PDFs in time for Ms. Fernandez to use the materials to prepare for class,  forcing her to meet with the Teacher's Assistant in person, which would not have been necessary had the materials been provided in an accessible format.

70.     Because employers began conducting recruiting events in September, Ms. Fernandez was unable to continue meeting with the Teacher's Assistant as frequently as she would have liked to sufficiently understand course concepts.

71.     Ms. Fernandez was also forced to rely on second-year students to write the problems out in a Word document with solutions.

72.     In addition, up to three Teachers Assistants devoted countless hours to tutoring Ms. Fernandez for each quiz because she was unable to follow the lecture in which the professor wrote on a whiteboard while he lectured and did not provide the charts, problems, and other image-heavy information in an accessible format prior to class. Although Duke provided Ms. Fernandez a list of Teachers Assistants she could contact for tutoring, she had to schedule the tutoring sessions with the Teachers Assistants herself, and they were not always able to meet with her. As a result, Ms. Fernandez devoted countless extra hours to scheduling these tutoring sessions, and

sometimes she was unable to receive tutoring when she needed it; Ms. Fernandez was forced to use the Teaching Assistants as the only means available to her to access her course materials, not as a supplement to her learning as was the case for her sighted peers.

73.     Ms. Fernandez received a P in the course but could have received a higher grade if Duke had provided accessible course materials in a timely manner.

### iv.     Effect on Other Aspects of Education

74.     The extra time Ms. Fernandez had to devote to overcoming inaccessible materials in classes had a domino effect on her other, non-quantitative classes that either did not have course materials or for which she received accessible course materials, such as Managerial Communication I, and on other aspects of her life at Duke.

75.     Although Ms. Fernandez received an HP grade in Managerial Communication I, she could have received a higher grade had she not been forced to spend extra time on her other courses.

76.     Because Ms. Fernandez was forced to schedule and attend tutoring sessions and use other work arounds to ensure she learned the course materials, the extra time doing these activities took up time for sleeping, attending recruiting events, and participating in extra-curricular activities.

77.     Unlike her peers, Ms. Fernandez's final exams were pushed into fall break. As a result, she did not have time to rest and recuperate, or to do activities she planned to do during fall break.

22

### B. 2018 Fall II

78.    Ms. Fernandez registered for four courses for the Fall II Term: Global Financial Management, Marketing Management, Foundations of Strategy, and Leadership Communication II.  Although she would have preferred to do so, she avoided taking additional quantitative classes because, based on her previous experience, she lacked confidence that Duke would provide accessible course materials.

79.    Duke provided the course materials for her Global Financial Management course in MathML. However, the lecture notes were text heavy and contained many formulas and explanations, and MathML only reads the formulas and equations. Tactile graphics would have allowed Ms. Fernandez to fully comprehend the unfamiliar symbols in the formulas and equations. Had Ms. Fernandez received these materials in Braille with tactile graphics, she would have had a much better opportunity to understand the concepts being taught.

80.    Ms. Fernandez received a P in Global Financial Management but could have received a higher grade if Duke had provided her accessible course materials that allowed her to fully interact with the content.

### III. Spring 2019 Term

81.    In January 2019, Ms. McMillan left Duke's Office of Institutional Equity. Until Duke hired Madeleine Dreher to replace Ms. McMillan, Ms. Fernandez worked with Ruth Tolman, the Director of Office of Student Life.

82.    Ms. Tolman was dismissive of Ms. Fernandez's concerns over accessibility issues at Duke, stating that "everyone feels like they're not going to survive." But no

23

other student had to cope with not being able to access course materials and having to repeatedly request that Duke provide them. Also, no other student had to spend extra time with professors and teaching assistants just to have access to the course content or experienced barriers in accessing the course registration and job search platforms.

83.     Due to Duke's failure to provide accessible course materials that permitted Ms. Fernandez to access Duke's courses on equal terms as the other students, and Duke's failure to provide some accessible materials altogether, Ms. Fernandez continued to avoid taking quantitative classes, which utilize formulas, charts, and graphs, and instead tried to take as many non-quantitative courses, which required primarily required reading and writing, as possible. The lack of more quantitative foundation will forever be missing from Ms. Fernandez' MBA knowledge base.

84.     Ms. Fernandez registered for five courses: Negotiation, Power and Influence, Strategic Brand Management, Operations Management, and a Client Consulting Practicum.

85.     In Operations Management, the only course that had quantitative content, Ms. Fernandez requested the equations in Braille, and Duke contracted with a third-party vendor to provide them. The vendor failed to provide Braille solutions to the equations. As a result, Ms. Fernandez was forced to have a friend transcribe the solutions for her, but they could not be done in time for her to have the learning materials contemporaneously with the lectures.

86.     Ms. Fernandez received a P in Operations Management but could have received a higher grade if Duke had provided accessible solutions to the equations. In the

24

four non-quantitative courses for which Ms. Fernandez received accessible course materials—Negotiation, Power and Influence, Strategic Brand Management, and a Client Consulting Practicum—she received SP grades.

## IV.    Fall 2019 & Spring 2020 Terms

87.    During the 2019 Fall Term, Ms. Fernandez continued to avoid taking non-quantitative courses due to Duke's failure to provide these materials to her in an accessible format.

88.    In October 2019, as a result of the issues Ms. Fernandez continued to experience with Duke's failure to provide her with accessible materials, she filed a complaint with Duke's Office of Institutional Equity.

89.    The Office of Student Life began creating accessible slide decks and PDF documents. However, the PDF documents continued to have accessibility errors.

90.    In the Spring 2020 Term, hopeful that Duke would fulfill its obligation of providing accessible course materials, Ms. Fernandez registered for a quantitative course: Art and Application Game Theory. She requested the course materials in Braille and in tactile graphics because they cannot be rendered in an accessible manner using a computer program like MathML.

91.    Initially Duke attempted to create its own Braille materials and tactile graphics. While these materials were technically accessible, Duke did not provide the explanations for the equations with the tactile graphics, so Ms. Fernandez was unable to fully interact with the content.

92.     Ms. Fernandez then received the slide decks in an accessible PDF and book with professionally made tactile graphics and Braille that cited the relevant slide number, which allowed Ms. Fernandez to fully interact with the course materials.

93.     Ms. Fernandez's experience in this class was far better than in any other quantitative course, which is reflected in the HP she received, in contrast to her other quantitative courses.

## V.     Duke's Deliberate Indifference to Equal Educational Opportunity

94.     As technology and digital content has permeated post-secondary education, there has been an extraordinary opportunity for students with print disabilities to have equal and mainstream access to the same content at the same time as everyone else. Unfortunately, at some campuses, like Duke, the failure to insist on accessible technology and content, and the failure of leadership to require accessible copies of course materials, assignments, graphics displayed in class, and class notes has resulted in greater inequality of access than existed when everything was printed on paper. This failure then necessitates the use of vastly inferior after-the-fact alternate auxiliary aids and services, such as assistants/scribes/readers who, under the best of circumstances, produce less effective communications, who interfere with privacy, independence, and time flexibility for the students who rely on them, and who, often, are insufficiently trained and insufficiently available.

95.     Through a combination of assiduous advocacy, education, and litigation, the NFB and other disability rights groups and state and federal agencies have attempted to focus the attention of post-secondary education on meeting the legal and moral

26

imperatives raised by these developments. The Departments of Justice and Education wrote the presidents of all American post-secondary institutions in June 2010 to advise them that:

> Requiring use of an emerging technology in a classroom environment when the technology is inaccessible to an entire population of individuals with disabilities- individuals with visual disabilities- is discrimination prohibited by the Americans with Disabilities Act of 1990 (ADA) and Section 504 of the Rehabilitation Act of 1973 (Section 504) unless those individuals are provided accommodations or modifications that permit them to receive all the educational benefits provided by the technology in an equally effective and equally integrated manner.

The Departments of Justice and Education explained that this advice includes not only emerging technology used in the classroom, but all "online courses and other online content, such as online applications for admission, class assignments, and housing."

96.     Unfortunately, since that letter, Duke has expanded its use of emerging technology to every aspect of education without making any effort to ensure the technology is accessible to an entire population of individuals with disabilities, who, like Ms. Fernandez, cannot see. Instead, it has chosen to rely on low-tech, after-the-fact auxiliary aids and services that did not permit Ms. Fernandez to receive **all** the educational benefits provided by the technology, much less in an equally effective and equally integrated manner and that Duke, in practice, failed to provide timely or effectively.

Case 1:20-cv-00492-NCT-JLW   Document 1   Filed 06/04/20   Page 27 of 38

97.     Duke was previously subject to litigation regarding its denial of accessible course materials for a student who cannot access hard copy, print course materials. *See Elmendorf v. Duke University*, 1:14-cv-697 (M.D.N.C. 2014).

98.     On information and belief, Duke has taken no action to identify and replace inaccessible technology and digital content with accessible technology and content.

99.     This deliberate inattention to accessibility pervades the campus beyond the classroom. As mentioned earlier, Duke's application for admission; Duke's course registration system, DukeHub; and Duke's web-based employer recruiting system, GTS, are completely inaccessible to Ms. Fernandez.

## VI.     Impact of Discrimination on Ms. Fernandez

100.     Ms. Fernandez's experiences have been humiliating and demoralizing. Ms. Fernandez has not been given an equal and independent opportunity to learn. The grades she received do not accurately reflect her knowledge and skill, but instead reflect the discrimination she suffered.

101.     Since the fall of 2018, Ms. Fernandez worked tirelessly to pass the courses required to successfully complete a Master of Business Administration. Although she took the required courses, Duke routinely failed to timely provide her with accessible course materials.

102.     As a result of the barriers Duke forced her to encounter, Ms. Fernandez received lower grades than she would have otherwise achieved and lacks confidence in her mastery of course concepts.

28

103. Ms. Fernandez also avoided taking quantitative courses that she otherwise would have taken, and that her sighted peers have the benefit of taking, because of Duke's repeated failure to provide her accessible materials in those courses. This did not need to be if Duke had done what it had promised and what, at all events, it was obligated to do.

104. After receiving more accessible course materials, Ms. Fernandez experienced a sharp increase in her grades, but she was still forced to miss out on the quantitative classes other students were taking because Duke failed to provide her accessible course materials in those classes. In the quantitative courses that she did take, if Duke had provided Ms. Fernandez with accessible course materials, she would have received higher grades and would have acquired a mastery of the materials expected of an MBA.

105. In addition, Ms. Fernandez was forced to spend countless extra hours that she could have devoted to her classes and extra-curricular activities to setting up and updating her profile and searching for jobs and employer events on GTS because its user profile, searches, and event sign ups were all inaccessible.

106. Similarly, Ms. Fernandez was forced to have the Registrar register her for classes, as opposed to using DukeHub like her sighted peers, requiring her to devote additional time and energy to registering for classes that she could have otherwise used to study for her classes, search for a job, or participate in extra-curricular activities.

107. Ms. Fernandez became emotionally exhausted, depressed, and anxious from her efforts to get Duke to provide her with an equal opportunity to learn and from her efforts to overcome, on her own, the barriers Duke put in her way.

108. Ms. Fernandez continued to pay tuition for an inferior educational experience while Duke failed to uphold its obligations. Duke failed to educate Ms. Fernandez in an equally effective manner and prepare her to enter the job market alongside her sighted classmates.

**COUNT I**
**Violations of § 504 of the Rehabilitation Act of 1973**
**29 U.S.C. §§ 794 *et seq.***

109. Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, as if alleged herein.

110. Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

111. Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government." *Id.* § 794(b)(1).

30

112.    Such federally funded programs and activities "shall take such steps as are necessary to ensure that no handicapped student is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination because of the absence of educational auxiliary aids for students with impaired sensory, manual, or speaking skills." 34 C.F.R. § 104.44(1); *see also id.* § 104.44(2).

113.    Duke receives federal grants, contracts, and other financial assistance, thereby subjecting itself to the requirements of Section 504.

114.    Ms. Fernandez is blind and was admitted based on all general requirements to be a student at Duke. She and similarly situated blind students are qualified individuals with a disability under Section 504.

115.    Duke has, solely by reason of disability, excluded blind applicants, students and alumni, including Ms. Fernandez, from applying to and effectively participating in its MBA program, denied them the benefits of the degree afforded to their sighted peers and otherwise discriminated against them in, its facilities, services, programs, or activities. Duke's violation of Section 504 and its regulations has denied blind applicant, students and alumni, including Ms. Fernandez, an equal opportunity to access the educational benefits, as well as the programs and services, Duke offers and unless enjoined will continue to deny blind applicants, students, and alumni these benefits, programs, and services..

116.    Duke's actions constitute intentional discrimination on the basis of a disability in violation of Section 504, in that Duke: (1) failed to effectively implement policies and procedures to ensure compliance with Section 504, specifically policies that

31

provide equal access and effective communication to individuals with disabilities; (2) failed to ensure that communications with blind applicants, students, and alumni, including Ms. Fernandez, were as effective as communications with nondisabled applicants, students, and alumni; (3) failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) failed to provide reasonable modifications of policies, practices, and procedures; (5) purchased and deployed new equipment and software that is inaccessible to blind applicants, students, and alumni, including Ms. Fernandez, after the effective date of Section 504; (6) failed to provide educational opportunities and educational information in a manner that is timely, equally effective, and equally integrated; and (7) otherwise discriminated against blind applicants, students, and alumni, including Ms. Fernandez.

117. As a result of Duke's actions, Ms. Fernandez suffered and will continue to suffer harm: she suffered from discrimination and unequal access to Duke's programs and activities, she expended time and energy attempting to overcome Duke's discrimination, she did not receive the grades she could have earned had she been granted an equal opportunity, and she did not receive the education and skills Duke's courses are intended to provide. As a result of Duke's actions, Ms. Fernandez's grades do not accurately reflect her knowledge and skills, she expended tuition money as well as time for benefits she did not receive, she experienced emotional distress, and she was denied full access to the knowledge intended to be communicated in her classes, which she needs to be successful in her career and confident in her abilities, and that prospective employers expect her to have as an MBA recipient. Now that she has graduated, Ms.

Fernandez will be denied equal access to the Career Management Center's services and programs, which are administered through inaccessible software platforms and materials, and are thus unavailable to blind alumni.

118.     Unless the requested relief is granted, blind applicants, students, and alumni, including Ms. Fernandez, will suffer irreparable harm in that they will be discriminated against and denied equal access to the programs and activities of Duke.

119.     As a result of Duke's actions, NFB suffered harm: it has been and will be required to continue to expend limited resources in vindicating the rights and interests of blind students to receive an equal education, as well as blind applicants who seek equal access to a Duke education and blind alumni who are being denied the benefits of Duke's career development services and programs.

120.     The actions by Duke were done intentionally or with deliberate indifference to the protected rights of blind applicants, students, and alumni, including Ms. Fernandez.

121.     By failing to meet its obligations to provide blind individuals with educational opportunities that are equal to those provided to students without disabilities, Duke excluded Ms. Fernandez and will continue to exclude other blind applicants, students, and alumni from participating in, and enjoying the benefits of, the educational opportunities, facilities, services, programs, or activities offered by Duke.

122.     Ms. Fernandez is entitled to compensatory damages, injunctive relief, reasonable attorney's fees, and costs. The NFB is entitled to injunctive relief, as well as reasonable attorney's fees and costs.

33

## COUNT II
## Violations of Title III of the Americans with Disabilities Act
## 42 U.S.C. §§ 12181 *et seq.*

123.    Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

124.    The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.*, guarantees equal access for qualified individuals to full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. §§ 12182(a).

125.    Public accommodations are prohibited from subjecting "an individual . . . on the basis of a disability . . .  to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

126.    Title III of the ADA provides that no public accommodation may "afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

127.    Discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

34

128. The regulations issued by the U.S. Department of Justice implementing Title III of the ADA provide that a public accommodation "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 28 C.F.R. § 36.303(a). For auxiliary aids and services to be "effective," they "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

129. Auxiliary aids and services include: "Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." "28 C.F.R. § 36.303.

130. Duke, as a private post-secondary school, is a public accommodation under Title III of the ADA.

131. As a result of Duke's actions, Ms. Fernandez suffered and will continue to suffer harm: she was denied equal access to Duke's Career Management Center's services and programs, which are administered through inaccessible software platforms and materials, that will continue to be inaccessible to her and discriminate against her as an alumna.

35

132.    Among its members, the NFB has thousands of high school students and college students and graduates who are blind, and therefore are individuals with a disability under the ADA and are entitled to the protections of the ADA.

133.    Duke is failing to meet its obligations to provide blind applicants, students, and alumni with educational and career opportunities that are equal to those provided to applicants, students, and alumni without disabilities. Duke's exclusion of blind individuals from participation in and the benefits of the educational experience it provides, denies them full and equal enjoyment of Duke's services, and otherwise discriminates against them in, its facilities, services, programs, or activities by denying them accessible educational and other materials and denying them auxiliary aids and services necessary to communicate those materials effectively, timely, privately, and independently. Ms. Fernandez's experience reflects Duke's failure to have systems in place to ensure that blind students have educational opportunities equal to those provided to students without disabilities.

134.    Duke's failure to meet its obligations to provide blind individuals with educational and career opportunities equal to those provided to individuals without disabilities constitutes an ongoing and continuous violation of the ADA and its supporting regulations. Unless restrained from doing so, Duke will continue to violate the ADA and discriminate against blind applicants, students, and alumni. Unless enjoined, Duke's conduct will continue.

135.    Unless the requested relief is granted, blind applicants, students, and alumni of the NFB will suffer harm in that they will be discriminated against and denied equal

36

access to the educational opportunities, facilities, services, programs, or activities of Duke, and will be unlawfully burdened in their pursuit of higher education.

136.    As a result of Duke's actions, NFB suffered harm: it has been and will be required to continue to expend limited resources in vindicating the rights and interests of blind applicants, students, and alumni to receive an equal education and access to Duke's programs and services.

137.    The ADA authorizes injunctive relief as appropriate relief to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

138.    The NFB and Ms. Fernandez are entitled to injunctive relief, as well as reasonable attorney's fees and costs.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiffs Ms. Fernandez and the NFB demand a judgment as follows:

(a)    A declaration that the Defendant has and continues to violate Section 504 of the Rehabilitation Act and Title III of the ADA;

(b)    An injunction: (1) prohibiting the Defendant from violating Section 504 of the Rehabilitation Act and Title III of the ADA; (2) requiring Duke to adopt and implement policies requiring procurement and use of accessible educational and other materials unless no appropriate accessible materials are available; (3) requiring Duke to provide fully accessible alternative format versions of inaccessible course materials in a timely manner; and (4) requiring Duke to make its course registration and job search and employer interview

37

registration software platforms accessible; (5) requiring Duke to make all resources available to alumni through the Career Management Center accessible;

(c)  An award of Ms. Fernandez's compensatory damages for her time, emotional distress, and other damages in an amount to be determined by a jury;

(d)  An award of Ms. Fernandez's and the NFB's reasonable attorney's fees and costs; and

(e)  Such other and further relief as the Court may deem just.

This the 4th day of June, 2020.

/s/ Holly Stiles
Holly Stiles
N.C. State Bar No. 38930
R. Larkin Taylor-Parker
N.C. State Bar No. 52422
Disability Rights North Carolina
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: 919-856-2195
Fax: 919-856-2244
holly.stiles@disabilityrightsnc.org
larkin.taylor-parker@disabilityrightsnc.org

Sharon Krevor-Weisbaum*
skw@browngold.com
Monica R. Basche*
mbasche@browngold.com
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Telephone: (410) 962-1030

*Counsel for Plaintiffs*

*\* Application for special appearance admission forthcoming*

38