# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
Civil Case No. 1:20-CV-492- NCT-JLW

MARY FERNANDEZ, *et al.*,

Plaintiffs,

v.

DUKE UNIVERSITY,

Defendant.

**DECLARATION OF PETER BOSSLEY**

1. My name is Peter Bossley. I am more than 18 years old, am competent to be a witness, and testify from my own personal knowledge regarding the facts set forth in this Declaration.

2. I am a Deputy ADA Coordinator and I direct the Ohio State University's ("Ohio State") Digital Accessibility Center, a position I have held since November 2016.[1] In that position, under the general direction of the University ADA coordinator/Section 504 Compliance Officer, I lead the institution's digital accessibility compliance program. I am the primary technical expert on digital accessibility issues at the institution and lead accessibility evaluation and remediation efforts for digital information and services that are being developed by campus units, being considered for purchase, or already implemented on campus.

[1] The term "accessible," when used in this Declaration, means the ability of a person with a disability to acquire the same information, engage in the same interactions, and enjoy the same services as a person without a disability in an equally effective and equally integrated manner, with substantially equivalent ease of use.

3. In my position I maintain, recommend changes to, and implement Ohio State's Digital Accessibility Policy and select technical standard(s) for use in ensuring the university complies with applicable federal and state laws and regulations. Ohio State's current standards are based on the Web Content Accessibility Guidelines ("WCAG") 2.0[2] at Level AA.

4. I guide vendors and developers of digital information and services including web and mobile applications, computer software, and other digital classroom content, *e.g.*, audio and video, to bring them into compliance with digital accessibility standards and accessible development practices.

5. From August 2013 until beginning my current position, I was an accessibility analyst at Ohio State. In that position, I developed a process for accessibility evaluations of new purchases and existing systems and provided consulting services to internal and external development teams on compliance with accessibility standards to improve on functional accessibility of user interfaces.

6. I am also the President of Accessibility Ally, Inc., a company that provides consulting services to organizations on development of accessible websites, applications, and online content and selection of accessible content management platforms and other web-based and digital systems. In that role I have provided remediation advice, evaluations, and code reviews for existing websites, web applications, and mobile applications for functional usability/accessibility and conformance with accepted industry standards for digital accessibility (WCAG 2.0 Levels A, AA, and AAA as well as Section 508).

---

[2] The Accessibility Guidelines Working Group of the World Wide Web Consortium ("WC3"), the main international standards organization for the World Wide Web. WCAG 2.0 provides "a wide range of recommendations for making Web content more accessible" to "people with disabilities, including blindness and low vision.'" Web Content Accessibility Guidelines (WCAG) 2.0, W3C (Dec. 10, 2008), https://www.w3.org/TR/WCAG20/.

7. I am certified by the International Association of Accessibility Professionals as a Certified Professional in Accessibility Core Competencies and a Certified Professional in Web Accessibility.

8. I have personally performed, or supervised, at least 300 evaluations of software and websites for accessibility over the past 7 years.

9. I have reviewed the Declaration of Duke's Assistant Dean of Career Services, Sheryle Dirks, and the Voluntary Product Accessibility Template ("VPAT") from 12Twenty for Duke's new alumni career portal.

10. In my experience, most vendor VPATs are not accurate because vendors often do not have the expertise to adequately conduct their own expert accessibility testing of their products. When I have reviewed a VPAT and then tested the product, I have generally found that the vendor's representations in the VPAT regarding conformance with WCAG or other accessibility criteria are often inaccurate.

11. Even if the individual writing the VPAT accurately describes the product's compliance with WCAG success criteria, the information conveyed in the VPAT alone is not sufficient to determine exactly how a product does not conform with WCAG criteria.

12. I would never rely solely on a vendor-provided VPAT to determine that a product is accessible. I always conduct my own expert accessibility testing, or procure testing from a qualified third-party who has the requisite expertise to evaluate a product.

13. Although Ms. Dirks states that the new alumni career portal is accessible, 12Twenty's VPAT states "Supports with Exceptions" in certain areas, meaning that based on the vendor's own VPAT representations, Duke's new alumni career portal is not fully accessible.

14. Typically, an institution of higher education requires vendors to conform with specific technical accessibility requirements like WCAG 2.0 or Section 508 of the Rehabilitation Act. Duke's policy "requires vendors who develop and/or maintain Duke websites, web-based applications and electronic information technology (EIT) to

demonstrate that their products meet accessibility standards *to the extent practicable*." (emphasis added). Requiring vendors to comply with accessibility guidelines "to the extent practicable" means that Duke does not actually require outside vendors to supply products that comply with accessibility guidelines.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

Peter Bossley Dated: August 19, 2020 By:
Peter Bossley