IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARY FERNANDEZ,<br>and<br>THE NATIONAL FEDERATION OF<br>THE BLIND, INC.,<br><br>Plaintiffs,<br>v.<br><br>DUKE UNIVERSITY,<br><br>Defendant. | 1:20CV492 |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Duke University's Partial Motion to Dismiss [Doc. #14] claims of disability-related discrimination brought by Plaintiffs Mary Fernandez and the National Federation of the Blind, Inc. ("NFB") (collectively, the "Plaintiffs"). For the reasons below, the motion is granted in part and denied in part.

I.

Plaintiffs' claims arise from Ms. Fernandez's experience as an applicant, student, and now alumnus at Duke's Fuqua School of Business. (Compl. [Doc. #1] ¶ 1.) Plaintiffs alleged in their June 2020 Complaint that Ms. Fernandez—who is blind and a member of the NFB—was denied equal access to various components of Duke's programs and activities in violation of Title III of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a). (Compl. at 1, ¶ 1.)

Ms. Fernandez applied to Duke's MBA program in November 2017, ultimately selecting the University in part due to assurances from an administrator that it was committed to meeting Ms. Fernandez's accessibility needs. (Id. ¶¶ 17, 30.) Allegedly however, even from her initial application, Ms. Fernandez was confronted with accessibility issues, so that she had to submit a paper rather than an electronic application and expend more time than her sighted peers to do so. (Id. ¶¶ 30-31.) Once enrolled at Duke, Plaintiffs contend that the accessibility issues continued; for example, Ms. Fernandez was unable to access the online mathematics tutorial required for incoming students—even with the assistance of a third-party service Duke hired to support her—so the University waived the course and she did not complete it. (Id. ¶¶ 39-40.) Ms. Fernandez alleges that without completing the tutorial, she lacked the foundation for success in more advanced courses that her classmates received. (Id. ¶ 40.)

Plaintiffs argue similar inequities marked Ms. Fernandez's time at Duke. (Id. ¶¶ 41-93.) Ms. Fernandez found the class registration system inaccessible; other course prerequisites—akin to the math tutorial—were inaccessible; her coursework, despite earlier assurances from University administrators, was not provided in an accessible form, so she relied on classmates or Teaching Assistants or expended more time and energy to prepare for class or complete assignments—if she was able to at all. (See, e.g., id. ¶¶ 41-44, 69, 71.) She alleges she was also unable to

2

fully access Duke's web-based employer recruiting system ("Alumni Career Portal"), which was the primary method for students and alumni to review and apply for job postings. (Id. ¶ 45.) With respect to the Alumni Career Portal, Plaintiffs contend that Ms. Fernandez had to spend an immeasurable amount of time—and depend on the third-party service—to navigate it but was still unable to use content on the Portal, such as resume books, to connect with the University's alumni network given that the books were displayed as graphics rather than text. (Id.) Plaintiffs believe these issues have and will persist for Ms. Fernandez as an alumnus, following her graduation from Duke. (Id. ¶ 49.) Ms. Fernandez further argues that Duke did not mitigate her accessibility barriers as she went through the associated employment recruiting process: failing to communicate with potential employers regarding her needs, to provide accessible interview preparation materials, and to facilitate accessible networking resources. (Id. ¶¶ 46-49.)

According to the Complaint, the University attempted to address some of Ms. Fernandez's accessibility challenges by, for example, hiring third-party vendors and, at one point, creating its own Braille materials and tactile graphics for her use. (Id. ¶¶ 40, 85, 89-92, 104). However, Plaintiffs allege that Duke failed to fully provide accessible programs and policies, despite the fact Ms. Fernandez made administrators aware of those failures prior to graduation, including filing a complaint with the University's Office of Institutional Equity. (Id. ¶¶ 47, 53, 57, 65, 82, 88.) Thus, Plaintiffs argue, because of the discrimination, Ms. Fernandez made lower grades and took fewer quantitative courses than she could have; spent

3

countless hours trying to solve accessibility issues that otherwise could have been devoted to extracurriculars or other endeavors such as recruiting; and became "emotionally exhausted, depressed, and anxious." (Id. ¶¶ 104-08.) Though the NFB describes its purpose and activities in detail, (see id. ¶¶ 18-24), it articulated generally the harms it suffered specifically as a result of Duke's actions, namely that it was and is "required to expend limited resources in vindicating the rights and interests of blind students to receive an equal education, as well as blind applicants who seek equal access to a Duke education and blind alumni who are being denied the benefits of Duke's career development services and programs," (id. ¶ 119; see also id. ¶¶ 25, 136).

II.

Soon after Ms. Fernandez's May 2020 graduation from Duke, Plaintiffs filed the instant lawsuit in this Court on June 4, 2020, alleging that the University's policies and programs with respect to Ms. Fernandez and other blind students amounted to violations of Section 504 and the ADA. (Id. ¶¶ 109-22, 123-38.) Plaintiffs requested injunctive and declaratory relief for those policies and programs, including the Alumni Career Portal, as well as awards of compensatory damages for Ms. Fernandez and attorneys' fees for Ms. Fernandez and the NFB. (Id. at 37-38.)

Duke then moved to partially dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and failure to state a claim. (Partial Mot. to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Partial Mot. to Dismiss")

4

[Doc. #14].) Specifically, Duke argues that Plaintiffs' request for injunctive and declaratory relief concerning its policies and practices for students is moot, as is their claim regarding the Alumni Career Portal, which apparently is being replaced, prohibiting standing for both Ms. Fernandez and the NFB. (Id. at 1-2.) Duke also contends that Ms. Fernandez's request for compensatory damages for conduct prior to June 4, 2018 is time-barred—effectively excluding her allegations concerning her Fall 2017 application—given Duke's contention that their claims are subject to a two-year statute of limitations. (Id. at 2.) In support of its argument, Duke submitted a declaration providing information about the Alumni Career Portal replacement and some evidence that accessibility was a consideration when selecting the replacement and that the replacement is "substantially compli[ant]" with accessibility requirements under the Web Content Accessibility Guidelines. (Decl. of Sheryle Dirks, Def.'s Br. in Supp. of Partial Mot. to Dismiss ("Def.'s Br. in Supp."), Ex. 1 [Doc. #15-1] ("Dirks Decl.").)

In their Response, Plaintiffs concede that Ms. Fernandez does not have standing to pursue injunctive and declaratory relief for Duke's policies and procedures for students since she is no longer one, (Pls.' Resp. in Opp'n to Def. Duke Univ.'s Partial Mot. to Dismiss at 13 n.2 [Doc. #16] ("Pls.' Resp. in Opp'n")), but that the NFB has organizational standing on its own to do so, (id. at 6-12). Plaintiffs further contend that the allegations as to the Alumni Career Portal are a justiciable controversy to which both Ms. Fernandez and the NFB on her behalf have standing, and that Ms. Fernandez's request for compensatory damages is not

5

time-barred. (Id. at 12-22.)  Plaintiffs attached three declarations to their Response, one of which was from Ms. Fernandez alleging and describing the "accessibility barriers" she "encountered" when she accessed the Alumni Career Portal replacement in August 2020. (Decl. of Mary Fernandez, Pls.' Resp., Ex. 3 [Doc. #16-4] ("Fernandez Decl.").)  The remaining two declarations describe in further detail the NFB's mission and ways in which it seeks to achieve its mission, (Decl. of Mark Riccobono, Pls.' Resp., Ex. 1 [Doc. #16-2] ("Riccobono Decl.")), and challenge the appropriateness and accessibility of the Alumni Career Portal replacement, (Decl. of Peter Bossley, Pl.'s Resp., Ex. 2 [Doc. #16-3]).

a.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may contest a court's subject matter jurisdiction through an avenue such as standing. See, e.g., White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005).  A defendant may bring such a "challenge in one of two ways: facially or factually." Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (citing Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).  In a facial challenge, "the defendant may contend 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based,'" which, "'in effect, [affords the plaintiff] the same procedural protection [s]he would receive under a Rule 12(b)(6) consideration.'" Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).  In that instance, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter

6

jurisdiction." Id. (reciting applicable Rule 12(b)(6) standard); see also Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 212-13 (4th Cir. 2017) (declining to review two declarations and other extrinsic evidence submitted by defendant given defendant brought facial rather than factual challenge).

"On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction"—a factual challenge—"the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." Kerns, 585 F.3d at 193; see also White Tail, 413 F.3d at 459 (writing that the "district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment" (internal citations omitted)). Nevertheless, the Fourth Circuit has held that "when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." Bone v. Univ. of N.C. Health Care Sys., No. 1:10-CV-994, 2019 WL 4393531, at *5 (M.D.N.C. Sept. 13, 2019) (quoting Kerns, 585 F.3d at 193).

b.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint; importantly a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Greensboro, 178 F.3d 231, 243 (4th Cir. 1999) (internal

7

citations omitted).  Despite this general rule, dismissal on the grounds that the claim is time-barred may be raised "under 'the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint.'" Tucker v. Specialized Loan Servicing, LLC, 83 F. Supp. 3d 635, 648 (D. Md. 2015) (quoting Goodman v. Praxair, Inc., 494 F. 3d 458, 464 (4th Cir. 2007)). Accordingly, at the Rule 12(b)(6) stage, "all facts necessary to the affirmative defense [that the plaintiff's claims are time-barred] [must] 'clearly appear[] on the face of the complaint,'" Goodman, 494 F.3d at 464 (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993), and if they do, "the plaintiff fails to state a claim," Tucker, 83 F. Supp. 3d at 686 (citing Jones v. Back, 549 U.S. 199, 214-15 (2007)).

c.

Central to Duke's motion are the doctrines of mootness and standing.  While "standing is determined at the commencement of a lawsuit," Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.5 (1992)), an initial finding of standing can be undone should "subsequent events moot the claim," id. (citing Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011)).  A case is rendered moot and the court deprived of subject matter jurisdiction "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Simmons, 634 F.3d at 763 (quoting United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008)); see also Ross v. Reed, 719 F.2d 689, 693-94 (4th Cir. 1983) ("If

intervening factual or legal events effectively dispel the case or controversy during the pendency of the suit, the federal courts are powerless to decide the questions presented.") However, "a party asserting mootness bears a 'heavy burden of persuading' the court that 'subsequent events [make] it <u>absolutely clear</u> that the allegedly wrongful behavior could not reasonably be expected to recur." <u>Deal v. Mercer Cnty. Bd. of Educ.</u>, 911 F.3d 183, 191 (4th Cir. 2018) (quoting <u>Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.</u>, 528 U.S. 167, 180 (2000)) (emphasis added in original).

As for standing, "the question . . . is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," which "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975); <u>see also</u> <u>White Tail</u>, 413 F.3d at 458 (quoting <u>Planned Parenthood of S.C. v. Rose</u>, 361 F.3d 786, 789 (4th Cir. 2004) ("A justiciable case or controversy requires a plaintiff [who] has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.") The constitutional limitations on standing are overcome when a plaintiff "provide[s] evidence to support the conclusion that: (1) '[she] . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there [is] a causal connection between the injury and the conduct complained of'; and (3) 'it [is] likely, as opposed to merely speculative,

9

that the injury will be redressed by a federal decision.'" White Tail, 413 F.3d at 458 (quoting Lujan, 504 U.S. at 560-61).

"The standing requirement must be satisfied by individual and organizational plaintiffs alike." Id. An organization may establish standing in its own right—organizational standing—"when it seeks redress for an injury suffered by the organization itself." Id. (citing Warth, 422 U.S. at 511). The requirements here are the same as for an individual plaintiff. See S. Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir. 2013). An organization may also establish standing on behalf of its members—associational or representational standing—when "(1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit." Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 320 (4th Cir. 2002). Though at the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate standing, Beck, 848 F.3d at 270 (internal citations omitted in original), the allegations still must contain "sufficient 'factual matter' to render them 'plausible on [their] face,'" id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Further, the Court will not, "apply the same presumption of truth to 'conclusory statements' and 'legal conclusions' contained in [a plaintiff's] complaint." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-56 (2007).

10

III.

Before addressing the merits of Duke's motion, the Court declines to review the declarations submitted by the parties. Duke explained in its Reply that it was bringing a facial challenge, which "attacks only the Complaint's allegations" and thus "the Court's analysis is based on the four corners of the Complaint" rather than outside evidence. (Def.'s Br. in Reply to Pls.' Resp. in Opp'n to Def. Duke Univ.'s Partial Mot. to Dismiss at 3-4 ("Def.'s Reply").) Therefore, the Court will treat Duke's challenge as such and not look beyond the Complaint or any document incorporated by reference. See Beck, 848 F.3d at 270; Wikimedia Found., 857 F.3d at 212-13.

a.

Duke contends that Plaintiffs' claims regarding the Alumni Career Portal are moot—effectively precluding standing for Ms. Fernandez and the NFB on her behalf—given that it is in the process of being replaced. However, there are no allegations regarding a replacement portal in the Complaint.[1] Consequently, there is still a dispute about whether the Alumni Career Portal is accessible and whether any replacement "completely and irrevocably eradicate[s] the effects of the alleged violation" stemming from the Portal in place at the time of Ms. Fernandez's

---

[1] Even if the Court reviewed the declarations relevant to the Alumni Career Portal, Ms. Fernandez's declaration alleged that she still "encountered accessibility barriers" when she accessed the replacement in August 2020, (Fernandez Decl. ¶ 9), and Ms. Dirks' declaration states only that the replacement "substantially complies with the Web Content Accessibility Guidelines" rather than with appropriate federal law, (Dirks Decl. ¶ 7).

11

allegations. (Def.'s Br. in Supp. at 13-14 (quoting Cnty. of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).) Therefore, Duke has not met the "heavy burden" of demonstrating mootness and the issue remains justiciable.

While Duke challenges the justiciability of Plaintiffs' claims regarding the Alumni Career Portal, as well as any organizational or associational standing the NFB may assert with respect to Defendant's student policies or procedures[2], the University does not appear to have contested Ms. Fernandez's individual or the NFB's associational standing should those claims not be rendered moot. Ms. Fernandez alleges that the process for setting up a profile on the Alumni Career Portal was "completely inaccessible," requiring assistance from a third-party vendor, and that the Portal lacked an accessible (1) search function for navigating job postings, (2) sign-up system for appointments and small group events with employers, and (3) content such as resume books to aid her job search. (Compl. ¶ 45.) Given the nature of the allegations and their connection to Duke, the Court finds Ms. Fernandez has standing to pursue relief for the Alumni Career Portal. See generally Lujan, 504 U.S. at 560-61.

Similarly, the Court finds that the NFB has associational standing to pursue these claims. As stated, Ms. Fernandez possesses individual standing in her own

---

[2] Plaintiffs seemingly concede that the NFB lacks associational standing to bring claims related to Duke's student policies or procedures given that Ms. Fernandez does not have standing to do so as an alumnus and the organization has not identified any other individual member who would have standing. See White Tail, 413 F.3d at 458 (requiring an organization to identify at least one member who has standing in order to establish associational standing).

12

right, and the action promotes the NFB's organizational purposes of "independence of the blind and equal access to higher education institutions for the blind." (Compl. ¶ 24). See Bone, 2019 WL 4393531, at *10.) Further, the declaratory and injunctive relief sought against Duke would benefit other members of the NFB without simultaneously requiring them to participate in the litigation. See, e.g., White Tail, 413 F.3d at 458; Hunt v. W.A. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977) ("If in a proper case the association seeks a declaration, injunction or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will insure to the benefit of those members of the association actually injured.") Accordingly, both Ms. Fernandez and the NFB have standing to pursue declaratory and injunctive relief concerning the Alumni Career Portal.

b.

Duke next challenges the NFB's organizational standing for declaratory and injunctive relief relating to Duke's student policies and procedures. Because Plaintiffs concede Ms. Fernandez lacks standing to pursue these claims as an alumnus and the NFB has identified no other member who would have standing, the organization seeks standing on its own behalf rather than on behalf of its members. Duke argues, among other things, that "[t]he Complaint fails to allege that [its] alleged conduct hampered [the] NFB's 'advocacy, education or litigation activities,'" and makes only "the conclusory allegation that Duke 'frustrat[ed] . . . [its] mission.'" (Def.'s Reply at 4-5 (quoting Compl. ¶¶ 19, 25).) The Court agrees

13

that these conclusory allegations are insufficient to meet the burden for standing, even at the pleading stage.

Although courts provide more leeway for general factual allegations at this stage, assuming that general allegations "embrace those specific facts necessary to support the claim," Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 620 (4th Cir. 2018), there must still be sufficient facts to plausibly and causally connect the injury alleged to a defendant's action or inaction, see Iqbal, 556 U.S. at 678. Although it detailed its purpose and activities, the NFB did not sufficiently articulate how Duke frustrated those, nor did it do more than allude to its need to "expend limited resources" "as a result of Duke's actions." (Compl. ¶ 136.) Despite the presumptions in its favor, the NFB has simply not demonstrated "personal harm both traceable to the challenged provisions and redressable by a federal court."[3] S. Walk, 713 F.3d at 182-83 (emphasis in original). Compare Havens Realty Corp. v. Coleman, 455 U.S. 363, 378 (1982) (finding organizational standing when plaintiff-organization demonstrated defendant's practices "perceptibly impaired" its activities and that "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organizations resources—constitutes far more than simply a setback to the organizations abstract social interests") with M.D. Shall Issue, Inc. v. Hogan, 963

---

[3] Plaintiffs may have provided the Riccobono Declaration in an attempt to remedy this deficiency in its Complaint; however, it could have amended its Complaint so that the Court could review the more detailed allegations in response to a facial challenge.

14

F.3d 356, 362 (4th Cir. 2020) (holding plaintiff-organization failed to demonstrate organizational standing by merely alleging that challenged policy "undermined" and "acted as an obstacle" to its purpose and message and did not "explain" how the policy "perceptibly impaired its activities").

Accordingly, Ms. Fernandez and the NFB may seek declaratory and injunctive relief for claims concerning the Alumni Career Portal but the NFB lacks organizational standing to pursue the same relief for Duke's student policies and practices.

IV.

Duke's final ground for partial dismissal is that Plaintiffs' request for compensatory damages based on allegations of conduct prior to June 4, 2018 are time-barred because certain claims brought pursuant to Section 504 and the ADA carry a two-year statute of limitations. The Court concurs and grants Duke's partial motion on this basis.

Neither Section 504 nor the ADA contain a statute of limitations, so courts generally borrow the statute of limitations that applies to the most analogous state-law claim. See 42 U.S.C. § 1988(a); A Soc'y Without a Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011), cert. denied, 132 S. Ct. 1960 (2012) (addressing ADA); McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 129 (4th Cir. 1994), cert. denied, 513 U.S. 1151 (1995) (addressing Section 504). One notable exception is for federal laws enacted or amended after December 1, 1990 that do not otherwise contain a limitations period, which maintain a catch-all

15

four-year statute of limitations provided by the Civil Justice Reform Act ("CJRA"). 28 U.S.C ¶ 1658. See Boone v. Bd. of Governors of the Univ. of N.C., 395 F. Supp. 3d 657, 666-67 (M.D.N.C. 2019) (citing Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004)). Importantly, whether the CJRA's statutory period applies depends upon whether "the plaintiff's claim against the defendant was made possible by a post-1990 amendment." Id. (emphasis added). The relevant question then is whether Ms. Fernandez's disability—blindness—would have been recognized by the ADA and Section 504 prior to their 2008 amendments under the Americans with Disabilities Act Amendments Act ("ADAAA").

In Runnebaum v. NationsBank of Maryland, N.A., 123 F.3d 156, 166 n.5 (4th Cir. 1997) (en banc), abrogated on other grounds, Bragdon v. Abbott, 524 U.S. 624, 631 (1998), the Fourth Circuit answered in the affirmative, prior to the ADAAA, determining that blindness would always constitute a disability. The Court acknowledged that while "a finding of disability under the [ADA] must be made on a case-by-case basis," id. (citing Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995)), it also recognized "that some conditions will always constitute impairments that substantially limit the major life activities of the afflicted individuals," id. (emphasis added). It found one of these conditions was "blindness" and "[i]n such cases, an individualized determination of whether the condition is an impairment that substantially limits one of more of the major life activities is unnecessary." Id.; see also Heiko v. Colombo Savings Bank,

16

F.S.B., 434 F.3d 249, 256 (4th Cir. 2006) (citing Runnebaum and writing, "recognition of a major life activity gives rise to the implication that certain impairments are by their very nature substantially limiting: the major life activity of seeing, for example, is always substantially limited by blindness").

Plaintiffs urge the Court to allow the parties to engage in further fact-finding to determine the appropriate statute of limitations. However, there are no further facts to be developed for the applicable inquiry here. The parties agree that Ms. Fernandez has been completely blind since childhood. Courts engaging in the kind of fact-finding Plaintiffs request assess "whether a given impairment substantially limits one or more of the major life activities of the individual." Runnebaum, 123 F.3d at 166 (citing Ennis, 53 F.3d at 59). As the Runnebaum court wrote, blindness always will constitute a substantial impairment, and Plaintiffs cite no case concerning total blindness suggesting otherwise. Therefore, the Court determines that Plaintiffs' claims for compensatory damages under Section 504 and the ADA are subject to a two-year statute of limitations.

V.

At this stage, Plaintiffs have standing to pursue declaratory and injunctive relief pursuant to Section 504 and the ADA for claims related to the Alumni Career Portal, although the NFB lacks standing for the same relief for those claims arising from Duke's student policies and procedures. Further, Plaintiffs' request for compensatory damages are subject to a two-year statute of limitations. Plaintiffs

17

may proceed with claims and requests for relief not addressed by Duke's motion and ruled upon by this Court.

VI.

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant Duke University's Partial Motion to Dismiss [Doc. #14] is GRANTED IN PART and DENIED IN PART as follows: it is GRANTED as to the injunctive and declaratory relief sought in Counts I and II for Defendant's student policies and practices and GRANTED as to the request for compensatory damages for alleged violations preceding June 4, 2018 and it is otherwise DENIED.

This the 29th day of July, 2021.

/s/ N. Carlton Tilley, Jr.<br>Senior United States District Judge